CR322-0019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | INDICTMENT NO. |
| | ) | |
| v. | ) | FILED UNDER SEAL |
| | ) | |
| JASON GERALD SHENK | ) | 18 U.S.C. § 1343 |
| | ) | Wire Fraud |
| | ) | |
| | ) | 18 U.S.C. § 1956(a)(2)(B)(i) |
| | ) | International Concealment Money |
| | ) | Laundering |
| | ) | |
| | ) | 18 U.S.C. § 1956(a)(1)(B)(i) |
| | ) | Concealment Money Laundering |
| | ) | |
| | ) | 18 U.S.C. § 1957 |
| | ) | Money Laundering Involving |
| | ) | Transactions Greater Than $10,000 |
| | ) | |
| | ) | 31 U.S.C. § 5314 |
| | ) | Failure to File Report of Foreign |
| | ) | Bank Account |

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment, unless otherwise stated:

## GENERAL ALLEGATIONS

1. From at least in or about April 2010 through in or about July 2019, **JASON GERALD SHENK ("SHENK")**, the defendant, did plan and execute a scheme whereby he obtained over $33 million dollars from charities in the United States based on his promise that he would use the money for the specific purpose of producing and distributing Bibles and Christian literature in the People's Republic of China ("China"). **SHENK** thereafter knowingly converted the charity money for

his own personal use and benefit and for other uses not authorized by the charities who entrusted him with the money.

2. **SHENK** spent the charity money entrusted to him on numerous purchases and expenditures that were never authorized by any charity or donor. These unauthorized transactions, expenditures, and payments included the following:

   a. Payments of approximately $1 million to an online sports gambling website that was subsequently shut down due to fraudulent activity;

   b. Purchases of equity shares totaling approximately $850,000 in a privately held nuclear energy company located in the United States;

   c. Purchases of at least sixteen life insurance policies in various people's names, totaling over $4 million;

   d. Purchases of diamonds, gold, and precious metals in amounts totaling almost $1 million;

   e. Purchases of domestic and foreign stocks sold on exchanges in the United States and abroad, in amounts totaling more than $188,000;

   f. Payments of approximately $7 million to the company running **SHENK's** family farm;

   g. Payments on at least ten personal credit cards in amounts totaling over $820,000; and the

  h. Purchase of foreign real estate near Santiago, Chile in the "Galt's Gulch" development in the amount of $320,000.

3. **SHENK** concealed and facilitated his scheme through a variety of false representations and false pretenses. Among others, these false representations and false pretenses included the following:

  a. **SHENK** falsely and repeatedly represented to the charities that all of their entrusted money was spent and would be spent on the production and distribution of Bibles and Christian literature in China.

  b. **SHENK** falsely represented how the charity money would be transferred from the United States to China for the purpose of producing and distributing Bibles and Christian literature in China.

  c. **SHENK** sent false and misleading spreadsheets and distribution lists to the charities that purported to represent the number of Bibles and items of Christian literature produced and distributed in various Chinese provinces.

  d. **SHENK** failed to provide verification that the charity money was being spent as authorized on the production and distribution of Bibles and Christian literature in China.

  e. **SHENK** falsely represented the nature of his foreign employment to the charities.

  f. **SHENK** made false statements to several international banks regarding his background, his assets, and the assets of his family, all in an effort to further his scheme.

  g. **SHENK** claimed alleged persecution from Chinese authorities to avoid oversight from the charities and to facilitate his scheme.

4. To further conceal and facilitate his scheme, **SHENK** laundered the charity money he fraudulently obtained through numerous bank accounts around the world that he controlled. These accounts were associated with various shell companies that **SHENK** also controlled.

5. It was further part of the scheme that **SHENK** deliberately failed to file reports of foreign bank accounts with authorities in the United States, as required under federal law.

6. It was further part of the scheme that **SHENK** renounced his United States citizenship to avoid financial reporting requirements under federal law.

## RELEVANT ENTITIES AND INDIVIDUALS

7.      **JASON GERALD SHENK**, the defendant, is an individual who has held himself out as a missionary dedicated to various Christian mission projects around the world, including in Thailand, Vietnam, Cambodia, and China, among other countries. **SHENK** was born in Dublin, Georgia, within the Southern District of Georgia; he previously resided in the United States, including in the Southern District of Georgia; and he has owned and/or operated property within the Southern District of Georgia. **SHENK** was a United States citizen until he renounced his citizenship on or around May 25, 2016.

8.      Morning Star Ministries ("MSM") is an organization listed as the owner of a business checking account held at a bank in Dublin, Georgia. MSM is neither registered as a legal entity with the Georgia Secretary of State, nor registered as a tax-exempt entity with the Internal Revenue Service. **SHENK** is one of three signers on this checking account, along with two relatives.

9.      Charity 1 is a registered charitable organization with a tax-exempt status under Internal Revenue Service regulations. Charity 1's full name is known to the grand jury. Charity 1 receives charitable donations from individual donors to fund a variety of Christian ministry and outreach programs around the world, including programs that provide food and clothing to needy families, address issues of material poverty through loan programs, and restore homes and infrastructure impacted by natural disasters. Charity 1 raises money to fund a program dedicated to the production and distribution of Bibles and Christian literature in China.

From April 2010 through July 2019, **SHENK** obtained approximately $22 million from Charity 1 for the specific purpose of producing and distributing Bibles and Christian literature in China.

10. Charity 2 is a registered charitable organization with a tax-exempt status under Internal Revenue Service regulations. Charity 2's full name is known to the grand jury. Charity 2 receives charitable donations from individual donors to fund a variety of Christian ministry and outreach programs, including programs that provide financial and medical support to needy children, that pay medical bills of missionaries working abroad, and that financially support the victims of human trafficking around the world. Charity 2 raises money to fund a program dedicated to the production and distribution of Bibles and Christian literature in China. From April 2010 through July 2019, **SHENK** obtained approximately $10 million from Charity 2 for the specific purpose of producing and distributing Bibles and Christian literature in China.

11. In addition to donations provided by Charity 1 and Charity 2, a variety of individuals donated money directly to bank accounts controlled by **SHENK** for the specific purpose of funding the production and distribution of Bibles and Christian literature in China.

12. **SHENK** used a variety of shell companies and their bank accounts to perpetrate his fraud and money laundering schemes, including but not limited to:

   a. Connect Asia BV, an entity registered in the Samoan Islands and the owner of multiple bank accounts in Singapore;

b. CLF Asia Limited, an entity registered in the British Virgin Islands and the owner of a bank account in Hong Kong;

c. Autumnvale Group Limited, an entity registered in the Marshall Islands and the owner of multiple bank accounts in Singapore;

d. BCB International, an entity registered in Georgia and the owner of bank accounts in the United States;

e. Heartland Plantations LLC, an entity registered in Georgia and the owner of bank accounts in the United States;

f. Global Paradigm Limited, an entity associated with bank accounts in the United States; and

g. Shenkland LLC, an entity registered in North Carolina and the owner of bank accounts in the United States.

## COUNTS ONE THROUGH FOUR
*Wire Fraud*
18 U.S.C. § 1343

13. The Grand Jury realleges and incorporates by reference paragraphs one through twelve above in their entirety as if fully set forth herein.

### The Scheme

14. From at least in or about April 2010 through in or about July 2019, within the Southern District of Georgia and elsewhere, the defendant **JASON GERALD SHENK** devised and intended to devise a scheme to defraud Charity 1, Charity 2, and other individuals, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises. Defendant **JASON GERALD SHENK**'s scheme was to unjustly enrich himself and others by obtaining money under false and misleading pretenses, including by making false statements directly to Charity 1, Charity 2, and other individuals and entities.

15. In reliance on false representations, Charity 1, Charity 2, and individual donors, all located outside of Georgia, deposited over $24,000,000 into a bank account in Georgia controlled by Defendant.

### Manner and Means

16. It was part of the scheme that:

   a. **SHENK** would and did promise to use the funds donated by Charity 1, Charity 2, and individual donors for the specific purpose of producing and distributing Bibles and Christian literature in China.

   b. **SHENK** would and did falsely and fraudulently represent that he

8

used the donated money for the production and distribution of Bibles and Christian literature in China when, in fact, he converted the charity money for his own personal use and benefit and for other uses not authorized by the charities who entrusted him with the money.

c. **SHENK** would and did use shell companies and related bank accounts to conceal the nature of the transactions.

d. **SHENK** would and did fail to disclose specific foreign bank accounts used to facilitate the fraud to authorities in the United States.

e. **SHENK** would and did renounce his United States citizenship to avoid financial reporting requirements under federal law.

f. **SHENK** would and did send materially false and misleading documents to the charities regarding the production and distribution of Bibles in China.

g. **SHENK** would and did make false statements to several international banks regarding his background, his assets, and the assets of his family, all in an effort to further his scheme.

### Executions

17. On or about the following dates, **JASON GERALD SHENK**, for the purpose of executing the scheme and artifice described above, and attempting to do so, caused to be transmitted in interstate and foreign commerce, by means of a wire communication, certain signs, signals, and sounds: that is, the defendant **JASON GERALD SHENK** caused the following transactions to be made:

9

| COUNT | DATE | AMOUNT | WIRE DESCRIPTION |
|---|---|---|---|
| 1 | July 5, 2016 | $345,400 | Wire transfer from Morning Star Ministries bank account ending in x4059, located in Georgia, to Connect Asia BV bank account ending in x9022, located in Singapore |
| 2 | August 9, 2016 | $573,121 | Wire transfer from Morning Star Ministries bank account ending in x4059, located in Georgia, to Connect Asia BV bank account ending in x9022, located in Singapore |
| 3 | December 10, 2018 | $412,740 | Wire transfer from Morning Star Ministries bank account ending in x4059, located in Georgia, to Connect Asia BV bank account ending in x9022, located in Singapore |
| 4 | July 26, 2019 | $156,660 | Wire transfer from Morning Star Ministries' bank account ending in x4059, located in Georgia, to Connect Asia BV bank account ending in x9022, located in Singapore |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS FIVE THROUGH SEVEN
*International Concealment Money Laundering*
18 U.S.C. § 1956(a)(2)(B)(i)

18. On or about the dates listed below, in the Southern District of Georgia, and elsewhere, the defendant,

### JASON GERALD SHENK,

did transfer and attempt to transfer funds from a place inside the United States to and through a place outside the United States, knowing that the funds involved in the transfer represented the proceeds of some form of unlawful activity and knowing that such transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343:

| COUNT | DATE | DESCRIPTION OF MONETARY TRANSACTION |
|---|---|---|
| 5 | September 11, 2017 | Transfer of approximately $140,000 from Morning Star Ministries bank account ending in x4059, located in Georgia, to and through Connect Asia BV bank account ending in x9022, located in Singapore, to and through Autumnvale Group Limited bank account ending in x2989, located in Singapore |
| 6 | February 19, 2018 | Transfer of approximately $110,000 from Morning Star Ministries bank account ending in x4059, located in Georgia, to and through Connect Asia BV bank account ending in x9022, located in Singapore, to and through Autumnvale Group Limited bank account ending in x2989, located in Singapore |
| 7 | December 13, 2018 | Transfer of approximately $110,000 from Morning Star Ministries bank account ending in x4059, located in Georgia, to and through Connect Asia BV bank account ending in x9022, located in Singapore, to and through Autumnvale Group Limited bank account ending in x2989, located in Singapore |

All in violation of Title 18, United States Code, Section 1956(a)(2)((B)(i).

## COUNTS EIGHT THROUGH FIFTEEN
*Concealment Money Laundering*
18 U.S.C. § 1956(a)(1)(B)(i)

19.     On or about the dates listed below, in the Southern District of Georgia, and elsewhere, the defendant,

## JASON GERALD SHENK,

knowingly conducted, and willfully caused others to conduct, the following financial transactions involving the proceeds of specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of such proceeds:

| COUNT | DATE | DESCRIPTION OF MONETARY TRANSACTION |
|---|---|---|
| 8 | February 21, 2017 | Transfer via Check #1013 of approximately $168,000 from BCB International bank account ending in x3428, located in the United States, to Heartland Plantations bank account ending in x3006, located in the United States |
| 9 | September 14, 2017 | Transfer via Check #1027 of approximately $110,599.34 from BCB International bank account ending in x3428, located in the United States, to Heartland Plantations bank account ending in x3006, located in the United States |
| 10 | November 27, 2018 | Transfer of approximately $149,867.13 from BCB International bank account ending in x3428, located in the United States, to Ameritas Insurance Company for a payment on a life insurance policy in name of Jason Shenk (policy number ending in 8227A) |
| 11 | December 26, 2018 | Transfer of approximately $133,481 from Ameritas Insurance Company to BCB International bank account ending in x3428, located in the United States, for a policy loan against a life insurance policy in the name of Jason Shenk (policy number ending in 8227A) |

12

| 12 | July 9, 2018 | Transfer of approximately $22,906.61 from BCB International bank account ending in x3428, located in the United States, to Ameritas Insurance Company for a premium and loan payment on a life insurance policy in name of David Shenk (policy number ending in 3047A) |
| 13 | December 26, 2018 | Transfer of approximately $26,775 from Ameritas Life Insurance Company to BCB International bank Account ending in x3428, located in the United States, for a policy loan against a life insurance policy in name of David Shenk (policy number ending in 3047A) |
| 14 | February 21, 2018 | Transfer of approximately $208,453.28 from BCB International Bank account ending in x3428, located in the United States, to Ameritas Insurance Company for a payment on a life insurance policy in name of Kevin Drost (policy number ending in 8822A) |
| 15 | May 7, 2018 | Transfer of approximately $193,110.00 from Ameritas Life Insurance Company to Heartland Plantations bank account ending in x3006, located in the United States, for a policy loan against a life insurance policy in name of Kevin Drost (policy number ending in 8822A) |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNTS SIXTEEN THROUGH THIRTY-SIX
*Money Laundering Involving Transactions Greater Than $10,000*
18 U.S.C. § 1957(a)

20. On or about the dates listed below, in the Southern District of Georgia, and elsewhere, the defendant,

### JASON GERALD SHENK,

did knowingly engage in the following monetary transactions by, through, or to a financial institution, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer of U.S. currency and other international funds, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the property was criminally derived:

| COUNT | DATE | DESCRIPTION OF MONETARY TRANSACTION |
|---|---|---|
| 16 | November 29, 2018 | Transfer of $300,000 from Autumnvale Group Limited bank account ending in x2989, located in Singapore, to Sindakit Software bank account ending in x8603, located in the United States |
| 17 | December 18, 2018 | Transfer of $300,000 from Autumnvale Group Limited bank account ending in x2989, located in Singapore, to Sindakit Software bank account ending in x8603, located in the United States |
| 18 | December 31, 2018 | Transfer of $50,000 from BCB International bank account ending in x3428, located in the United States, to Sindakit Software bank account ending in x8603, located in the United States |
| 19 | January 2, 2019 | Transfer of $50,000 from BCB International bank account ending in x3428, located in the United States, to Sindakit Software bank account ending in x8603, located in the United States |

| | | |
|---|---|---|
| 20 | February 7, 2019 | Transfer of $50,000 from Autumnvale Group Limited bank account ending in x2989, located in the United States, to Sindakit Software bank account ending in x8603, located in the United States |
| 21 | September 17, 2018 | Transfer of $50,000 from Autumnvale Group Limited bank account ending in x2989, located in Singapore, to Flibe Energy bank account ending in x2476, located in the United States |
| 22 | October 15, 2018 | Transfer of $50,000 from Autumnvale Group Limited bank account ending in x2989, located in Singapore, to Flibe Energy bank account ending in x2476, located in the United States |
| 23 | November 15, 2018 | Transfer of $50,000 from Autumnvale Group Limited bank account ending in x2989, located in Singapore, to Flibe Energy bank account ending in x2476, located in the United States |
| 24 | December 17, 2018 | Transfer of $50,000 from Autumnvale Group Limited bank account ending in x2989, located in Singapore, to Flibe Energy bank account ending in x2476, located in the United States |
| 25 | January 15, 2019 | Transfer of $50,000 from Autumnvale Group Limited bank account ending in x2989, located in Singapore, to Flibe Energy bank account ending in x2476, located in the United States |
| 26 | February 15, 2019 | Transfer of $50,000 from Autumnvale Group Limited bank account ending in x2989, located in Singapore, to Flibe Energy bank account ending in x2476, located in the United States |
| 27 | March 22, 2019 | Transfer of $50,000 from Autumnvale Group Limited bank account ending in x2989, located in Singapore, to Flibe Energy bank account ending in x2476, located in the United States |
| 28 | April 15, 2019 | Transfer of $50,000 from Autumnvale Group Limited bank account ending in x2989, located in Singapore, to Flibe Energy bank account ending in x2476, located in the United States |
| 29 | May 15, 2019 | Transfer of $50,000 from Autumnvale Group Limited bank account ending in x2989, located in Singapore, to Flibe Energy bank account ending in x2476, located in the United States |

| 30 | June 17, 2019 | Transfer of $50,000 from Autumnvale Group Limited bank account ending in x2989, located in Singapore, to Flibe Energy bank account ending in x2476, located in the United States |
|---|---|---|
| 31 | February 21, 2017 | Transfer via Check #1013 of approximately $168,000 from BCB International bank account ending in x3428, located in the United States, to Heartland Plantations bank account ending in x3006, located in the United States |
| 32 | November 27, 2018 | Transfer of approximately $149,867.13 from BCB International bank account ending in x3428, located in the United States, to Ameritas Insurance Company for a payment on a life insurance policy in name of Jason Shenk (policy number ending in 8227A) |
| 33 | April 6, 2018 | Transfer of $15,000 from Autumnvale Group Limited bank account ending in x2989, located in Singapore, to CK Futures bank account ending in x1301, located in the United States |
| 34 | October 23, 2018 | Transfer of $50,000 from Autumnvale Group Limited bank account ending in x2989, located in Singapore, to CK Futures bank account ending in x1301, located in the United States |
| 35 | June 27, 2018 | Payment of credit card in the amount of $10,972.75 from BCB International bank account ending in x3428, located in the United States |
| 36 | May 29, 2018 | Payment of credit card in the amount of $20,719.51 from BCB International bank account ending in x3428, located in the United States |

All in violation of Title 18, United States Code, Section 1957(a).

## COUNT THIRTY-SEVEN
*Failure to File Report of Foreign Bank Account*
31 U.S.C. § 5314, 5322

21. On or about October 3, 2016, in the Southern District of Georgia, and elsewhere, the defendant,

### JASON GERALD SHENK,

did willfully fail to file with the U.S. Treasury's Financial Crimes Enforcement Network (FinCEN), FinCEN Form 114, Report of Foreign Bank and Financial Accounts ("FBAR"), disclosing that he had an interest in and signature authority over financial accounts in a foreign country, namely, a bank account at Siam Commercial Bank in Thailand ending in x8351, a bank account at Hang Seng Bank in Hong Kong ending in x0883, and bank accounts at DBS Bank in Singapore ending in x4533 and x9022, all of which had a value of more than $10,000 at some time during the calendar year 2015.

All in violation of Title 31, United States Code, Sections 5314 and 5322(a), and Title 31, Code of Federal Regulations, Sections 1010.350, 1010.306(c)-(d), and 1010.840(b)-(c) (formerly Title 31 Code of Federal Regulations, Section 103.24, 103.27(c)-(d) and 103.59(b)).

## FORFEITURE ALLEGATIONS

The allegations contained in Counts One through Thirty-Six of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(A), 981(a)(1)(C), 982(a)(1), 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1343 set forth in Counts One through Four of this Indictment, the defendant, **JASON GERALD SHENK**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), 982(a)(2)(A), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

Upon conviction of an offense in violation of Title 18, United States Code, Sections 1956 and 1957, set forth in Counts Five through Thirty-Six of this Indictment, the defendant, **JASON GERALD SHENK**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), 981(a)(1)(C), 981(a)(1)(A), and Title 28, United State Code, Section 2461(c), any property, real or personal, involved in such offense, and any property traceable to such property.

The property subject to forfeiture includes, but is not limited to, any funds in the following bank accounts:

1. ABN Amro Bank (Singapore), account ending in #6457, account in the name of Connect Asia BV

    2.     Bank of America (United States), account ending in #0217, account in the name of Jason Shenk
    3.     Bank of America (United States), account ending in #1724, account in the name of Jason or Sharon Shenk
    4.     Bank of America (United States), account ending in #5954, account in the name of Jason Shenk
    5.     Bank of America (United States), account ending in #6542, account in the name of Heartland Plantations, LLC
    6.     Bank of America (United States), account ending in #7580, account in the name of Heartland Plantations, LLC
    7.     Bank of America (United States), account ending in #8939, account in the name of Jason Shenk
    8.     Citibank (Singapore), account ending in #5083, account in the name of Jason Shenk
    9.     Citibank (Singapore), account ending in #5091, account in the name of Jason Shenk
    10.    Citibank (Singapore), account ending in #6366, account in the name of Jason Shenk

If any of the property described above, as a result of any act or commission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

*(Additional signatures on next page)*

A True Bill.

_____
Foreperson

_____
David H. Estes
United States Attorney

_____
Matthew A. Josephson
Assistant United States Attorney
*Lead Counsel

_____
Patricia G. Rhodes
Assistant United States Attorney
Chief, Criminal Division